UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| BRIANA KIRK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   vs. | ) CAUSE NO.  4:19-cv-10 |
| | ) |
| PIERCE MORTUARY COLLEGES, INC., | ) |
| | ) |
|     Defendant. | ) |
| | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**NATURE OF CASE**

1. This is an action for damages and injunctive relief brought pursuant to Section 504 of the Rehabilitation Act of 1973, Pub.L. 93-112, Title V, § 504, Sept. 26, 1973, 87 Stat. 39429, codified at 29 U.S.C. §§ 794 et seq. Plaintiff alleges that Defendant, Pierce Mortuary Colleges, Inc., (hereafter "Defendant" or "Mid-America"), failed to accommodate her disability, resulting in her inability to complete a degree in its Mortuary Affairs Program.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, since Plaintiff's claims arise under a federal statute.

3. Venue in the United States District Court, Southern District of Indiana, is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) since all parties reside in this district and the conduct which underlies Plaintiff's claims took place in this district.

## PARTIES

4. Plaintiff is an adult female resident of Kentucky who was enrolled in the Mortuary Affairs Program at Defendant's Mid-America College of Funeral Services in Jeffersonville, Indiana.

5. Defendant is for profit corporation that operates an institution of higher learning that receives federal financial assistance as defined in the Rehabilitation Act.

## FACTS

6. Kirk suffers from a disability as that term is defined by the Americans with Disabilities Act. Kirk suffers from Irritable Bowel Syndrome, Postural Orthostatic Tachycardis Syndrome and Chronic Neck Pain.

7. Kirk enrolled in Mid-America College of Funeral Service located in Jeffersonville, Indiana, on October 3, 2017 as a 3rd Quarter Student. Kirk, who lived in Lexington, Kentucky, was a commuting student. Kirk expected to graduate in September 2018.

8. Kirk's disabilities affected her ability to attend classes. For example, if her IBS flared up, it would make it difficult to arrive on time to class or force her to leave early from class. Kirk's heart condition caused dizzy spells which would prevent her from being able to drive to or otherwise attend class.

9. As her attendance began to suffer, Kirk met with Dean Alisa Perkins to discuss her condition and its impact on her attendance. Perkins requested that Kirk bring in documentation for her consideration. During the meeting, Perkins told Kirk that perhaps she should reconsider going into this career given her health condition.

10. Over the next several weeks, Kirk visited her physicians to obtain documentation to provide to Perkins for consideration. Kirk met with Perkins and provided her with documentation from her primary care physician and her cardiologist. Perkins told Kirk that the documentation was "acceptable for consideration." She did not ask for any additional documentation.

11. Thereafter, Kirk continued to have attendance issues. When she would be absent, she provided Perkins with an excuse from her doctor. When Kirk would miss, Perkins would have Kirk sign attendance policy warnings papers with the understanding that if she did not sign to acknowledge them, she could be dismissed from the program. Perkins informed Kirk that her doctor's excuses were not a blanket excuse for her absences, but that would give her "consideration". Perkins also reiterated her opinion that Kirk should not be pursuing a degree in mortuary science due to her health conditions.

12. At the end of the third quarter, Defendant's President, Dr. Mitch Mitchell met with Kirk and Perkins. Mitchell informed Kirk that she should move closer, staty with a friend or rent an AirBnB to stay at throughout the school week. Mitchell also told Kirk that if he started to notice attendance issues with her in the 4th quarter there would be no attendance sheet signing. He stated, "you will be out before you hit 10% [referring

to the absent rate of missing 10% of the scheduled hours]. Kirk informed Mitchell that she had provided documentation regarding her health. Mitchell, who apparently had not been informed about Kirk's health, requested that Perkins provide him with the documentation. Mitchell and Perkins reiterated that Kirk could no longer be absent from classes.

13. On or about February 21, 2018, during her last one on one meeting of the Fourth Quarter, Perkins informed Kirk that she was at risk of being placed on administrative leave due to her absences. Kirk informed Perkins that she felt that Defendant's treatment of her violated the Americans with Disabilities Act. Perkins responded that Kirk had never used the word disability when talking about her health and, if she wanted an accommodation, there was different paperwork for that. Perkins told Kirk that it was not her job to advocate for her and that if she needed an accommodation, she would be too busy to "babysit" her.

14. Kirk scheduled an appointment for March 9, 2018 to have her physicians complete the accommodation paperwork.

15. Mitchell sent Kirk an email asking to set an appointment with her between March 5th and 9th. Kirk responding looking to set an appointment for March 8th. Mitchell responded on March 6th saying that she should meet with him the next time she was on campus and, later that day, after attempting to pull her out of class, met with Kirk and placed her on administrative leave for six months. Throughout the meeting, Mitchell was angry and threatening toward Kirk.

16. As a result of being dismissed from the program, Kirk lost her employment with Ties Mortuary Service and Kentucky Mortuary Services, where she was working as an embalmer and performing other mortuary services. Her employers could not maintain her employment because she could only hold her position if she was enrolled as a student in a Mortuary Affairs Program.

17. Kirk was passing all of her classes at the time she was dismissed from the program.

18. Kirk's credit hours at Defendant would not transfer to any other school because Defendant was not regionally accredited.

### Cause of Action

### Violation of The Rehabilitation Act

19. Plaintiff reasserts all of the allegations contained in paragraphs 1 through 18.

20. At all relevant times, Plaintiff was a qualified individual with a disability under the Rehabilitation Act in that she had a physical impairment that substantially limited a major life activity.

21. At all relevant times Plaintiff was capable of satisfying the academic and technical requirements set by the Mid-America with the aid of reasonable accommodations.

22. At all relevant times, Mid-America had full knowledge of Plaintiff's disability and therefore had the duty to accommodate that disability during her two quarters.

23. By failing to provide the necessary accommodations as described above, Mid-America caused Plaintiff's dismissal from the Mortuary Affairs program, as a result of which she suffered damages.

### RELIEF REQUESTED

WHEREFORE, Plaintiff prays for the following relief:

A. Compensatory damages in an amount to be proved at trial;

B. Punitive damages in an amount to be proved at trial;

C. Injunctive relief ordering Defendant to reasonably accommodate Plaintiff's disability;

D. Attorney fees and costs; and

E. Such additional relief as the Court deems just and proper, at law or in equity.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/ Andrew Dutkanych III
Andrew Dutkanych III, Atty. No. 23551-49
411 Main Street
Evansville, Indiana 47708
Telephone:   (812) 424-1000
Facsimile:    (812) 424-1005
Email: ad@bdlegal.com

Attorneys for Plaintiff, Briana Kirk

## **DEMAND FOR JURY TRIAL**

Plaintiff, Briana Kirk, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/ Andrew Dutkanych III
Andrew Dutkanych III, Atty. No. 23551-49
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com

Attorneys for Plaintiff, Briana Kirk